# PITTSBURGH BOAT-YARD CO. v. WESTERN ASSUR-
## ANCE CO.

ERROR TO THE COURT OF COMMON PLEAS NO. 2 OF ALLEGHENY
COUNTY.

Argued November 9, 1887—Decided January 3, 1888.

Where the assured had placed the money for the premium in the hands of a broker through whom the insurance was obtained, and the company's general agent delivered the policy, giving credit to the broker for the premium, and afterwards in his usual course of business reported and paid the amount thereof to his company : *Held,*

That, though the policy contained a provision that the company should not be liable until the premium was actually paid and that the agent had no authority to waive any of the conditions, yet the question was, whether the agent made the broker his own debtor for the amount he had paid to the company, to be submitted to the jury to find whether or not the premium had been paid.

Before GORDON, C. J., PAXSON, STERRETT and WILLIAMS, JJ.; TRUNKEY, GREEN and CLARK, JJ., absent.

No. 117 October Term 1887, Sup. Ct.; court below, No. 205 July Term 1887, C. P. No. 2.

On May 22, 1884, the Pittsburgh Boat-yard Co., Limited, began an action of covenant against the Western Assurance Company of Toronto, Canada, declaring upon a policy of insurance against loss by fire, dated September 15, 1883. Among the conditions of the policy were the following: " This company will not be liable by virtue of this policy or any renewal thereof until the premium therefor be actually paid." . . . " It is further understood and made part of this contract that the agent of this company has no authority to waive, modify or strike from this policy any of its printed conditions."

At the trial on March 18, 1887, before WHITE, J., the facts appeared : John Conway an insurance broker in Pittsburgh, on behalf of the plaintiff, had obtained an insurance upon its property for $3,000, at 4 per cent. premium, in three policies issued by three companies, not including the defendant. Shortly afterwards, these companies canceled the policies. Mr. Con-

way, who surrendered them for the plaintiff, received the unearned portion of the premiums thereon, amounting to $105, and was to replace insurance in other companies. He then negotiated with John D. Biggert, at this time the general agent in this state of the Western Assurance Co. of Toronto, Canada, as well as its local agent in Pittsburgh, representing also the Phœnix Insurance Co., of London, who placed $1,500 of the insurance with the defendant company and $1,500 with the Phœnix company at 6 per cent. premium. When the two policies were received by Mr. Biggert he handed them over to Mr. Conway for the plaintiff. At that time Mr. Conway offered to pay the $90 premium upon one of the policies out of the plaintiff's money still in his hands, but it was arranged that Mr. Biggert would wait a short time so as to receive the premiums on both policies at once. In a few days the Phœnix company canceled its policy and returned it to Mr. Biggert, thus leaving only the policy of the defendant company.

Mr. Biggert's course of business with the defendant company was to make monthly reports about the middle of each month of all policies issued through him the previous month, and, 30 days or so after the report was made, to transmit the money for the premiums represented therein. His report for October, 1883, embraced the plaintiff's policy, and in November following he transmitted to defendant company about $2,800, representing the premiums upon the policies in his October report, which sum included $90 for the premium on plaintiff's policy. On November 6, 1883, a few days before the sending of this remittance, the property insured was destroyed by fire. Mr. Biggert did not notify the company of the fire when he sent the remittance. He testified that it was by an oversight that he had included the $90 premium on the plaintiff's policy in his October report and November remittance, and that the premium had never been paid to him. In December, 1883, Mr. Conway tendered the premium to Mr. Biggert who refused it.

The sum Mr. Biggert advanced upon the policy was not returned to him or adjusted between him and the company until in January, 1885, after this suit brought. The plaintiff company had actual knowledge that the premium had not been paid over to Mr. Biggert when the policy was delivered

to him and for some time afterwards.   On or about November 21, 1883, proofs of loss were made out and submitted to a Dr. Thorn, appointed by Mr. Biggert to investigate the circumstances and to adjust the loss.   Exceptions were made to the proofs furnished; one was that the certificate of the nearest magistrate was not attached, the other called the attention of the plaintiff to the fact that the adjuster had been informed the premium had never been paid, asking an explanation why it was not paid and on what ground a waiver was asked for. A new set of proofs was supplied meeting the objections suggested, but containing no explanation or reference to the nonpayment of the premium.

The plaintiff requested the court to charge the jury as follows:

1. That if the jury find from the evidence that Biggert was the general agent of the defendant company, for the state of Pennsylvania; that as such he accepted risks for the company, issued and delivered its policies, countersigned by him; that in accordance with the usual mode of business adopted by him and the company he on or about the middle of each month rendered to the company an account or statement of the policies issued, and the premiums thereon for the preceding month, and in about thirty days thereafter, remitted or paid to the company the balance of said accounts for premiums, after deducting his commission and other charges; and that the premium on the policy in suit was accounted for and paid to the company by Biggert, in accordance with this mode of business, the condition in the policy in regard to the prepayment was thereby waived, and the plaintiff is entitled to recover.

The court refused this and other like points of the plaintiff, and, as requested in the fourth point of the defendant, charged the jury that under all the evidence the verdict should be for the defendant.   A verdict for the defendant company having been rendered, the plaintiff took this writ, assigning as error inter alia the refusal of said points and the direction to find for the defendant.

*Mr. H. W. Weir* (with him *Mr. J. M. Garrison*), for the plaintiff in error:

1. The evidence tended strongly to prove a waiver of the condition of the policy in regard to the prepayment of the premium. It was not only sufficient to carry the case to the jury, but if believed, would have justified a verdict for the plaintiffs : Universal Ins. Co. v. Block, 109 Pa. 535 ; Lebanon Mut. Ins. Co. v. Hoover, 113 Pa. 591 ; Elkins v. Insurance Co., 113 Pa. 386 ; Continental Life Ins. Co. v. Ashcraft, 18 W. N. 97 ; Bochen v. Insurance Co., 35 N. Y. 131 ; Shelden v. Insurance Co., 26 N. Y. 460 ; Bodine v. Insurance Co., 51 N. Y. 117 ; Fraine v. Insurance Co., 62 N. Y. 598.

2. Mr. Biggert was the general agent of the defendant company when he delivered the policy without payment of the premium, and his power in this respect was co-extensive with the power of his principal: Marcus v. Insurance Co., 68 N. Y. 665 ; Rechner v. Insurance Co., 65 N. Y. 195 ; Insurance Co. v. Wilkinson, 13 Wall. 222. The return of the premium by the company to Biggert long after the loss and after this suit was brought, would not affect the right of the assured : White v. Insurance Co., 120 Mass. 330 ; Home Ins. Co. v. Curtis, 32 Mich. 402.

3. The evidence that after notice of the loss, the general agent of the company, through an adjuster, twice received proofs of loss, demanded bills, invoices, etc., as additional proofs of loss, was evidence of a waiver of the alleged non-payment of the premium, even if it had not been paid. If, in any negotiations or transactions with the assured after a knowledge of the forfeiture, the company recognizes the continued validity of the policy, or does acts based thereon, or requires the assured by virtue thereof to incur some trouble or expense, the forfeiture as matter of law is waived : Titus v. Insurance Co., 81 N. Y. 410 ; Penn. Ins. Co. v. Kettle, 39 Mich. 57 ; Carr v. Insurance Co., 60 N. H. 573 ; Inland Ins. Co. v. Stauffer, 33 Pa. 404 ; Ben. Franklin Ins. Co. v. Flynn, 98 Pa. 635.

*Mr. John S. Ferguson* (with him *Mr. J. M. Cook*), for the defendant in error :

1. The policy emphatically informed the plaintiff that the insurers would not be liable upon it until the premium was actually paid, and that the agent of the company had no authority to waive any of its conditions. There being an express

exclusion by the terms of the policy of any authority on the part of the general agent to waive the condition, the company was not bound by his implied promise that the policy should be in force from the date of its delivery notwithstanding non-payment of the premium, and the company was not bound: Waynesboro M. F. Ins. Co. v. Conover, 98 Pa. 384 ; Greene v. Insurance Co., 91 Pa. 387 ; Marland v. Insurance Co., 71 Pa. 393 ; Pottsville M. F. Ins. Co. v. Minnequa Springs Imp. Co., 100 Pa. 137.

2. It is urged, however, that because Biggert reported the policy before the fire and after it paid the premium, the company became bound. But the only inference chargeable to the company would be that the policy had been issued for a premium actually paid. And when the money reached the company, the fire had occurred; why should the company be held responsible ?

OPINION, MR. JUSTICE WILLIAMS :

This action was brought upon a policy of insurance against loss by fire. The defence was the non-payment of the premium. The important question raised by the assignments of error is, whether there was evidence upon this subject that should go to the jury. The facts were not involved in controversy and are as follows : Speer, acting for the plaintiff, applied to Conway, an insurance broker and solicitor of risks, for insurance upon the plaintiff's property. Conway took the risks to Biggert, who was an insurance agent and the general agent in Pennsylvania for the defendant company, to be placed in suitable companies. As general agent he placed $1,500 of the amount desired in the defendant company and counter-signed and delivered a policy therefor. Conway had $105 of the plaintiff's money in his hands, with instructions to use it for paying premiums on policies of insurance. He communicated this fact to Biggert, and offered to pay the premium on this policy amounting to $90, but Biggert, who was negotiating for another policy of like amount upon the same property, said it might just as well remain in the hands of Conway until the other policy was obtained, when both could be paid for at the same time. The premium was then charged on Biggert's books to Conway, in whose hands he knew the money to be, and the

company defendant was credited with it. In due course of business he remitted it to the company, in whose hands it remained until after this suit was brought.

This is not therefore the case of one who attempts to secure the benefit of insurance without the payment of the premium; for the money with which to pay it had left the hands of the assured and been placed in those of the broker before the policy was obtained. The real question is whether the assured, notwithstanding the payment of the money by and the delivering of the policy to him, is to lose the benefit of his contract by reason of the course of dealing between the intermediate agents. Speer had paid to Conway the broker; Conway had offered the money to Biggert, the general agent of the defendant; Biggert had charged it up to Conway and paid his principal in the ordinary course of his business; the policy had been delivered. What remained to be done except for Biggert and Conway to settle the transaction between themselves, which each had in effect settled with his principal?

We are decidedly of opinion that upon this state of facts the question of payment was for the jury. It was not a question whether the adjuster had waived or could waive a condition in the policy, nor whether Biggert, the general agent, had power to change the terms or conditions of insurance; but whether there was actual payment. As to the assured, there was no doubt, for it was admitted, that the money had left Speer's hands for this very purpose. As to the insurer, there was the fact that the money had been actually paid in the usual way by Biggert and received without objection. The open question was over the credit given by Biggert to Conway. If this had been given in the usual manner, making Conway his debtor for the amount which he paid for him to defendant, the jury would have been fully justified in finding the fact that the premium was paid. This was for the jury. The giving of a binding instruction to find for the defendant was therefore error, and for this the case must go back for another trial.

Judgment reversed, and venire facias de novo awarded.