DEBORA K. MOORE, Appellee, v. ORDER OF RAILWAY CONDUCTORS OF AMERICA, Appellant.

| 90 | 721 |
|---|---|
| 122 | 265 |

| 90 | 721 |
|---|---|
| f132 | 529 |

| 90 | 721 |
|---|---|
| 140 | 46 |

**Mutual Insurance**: PAYMENT OF ASSESSMENTS: DEFAULT: WAIVER. Where, notwithstanding a by-law of a mutual life insurance company, that the failure to pay any assessment within sixty days from the date of notice, should work a forfeiture of membership in the association, payment of assessments were received from a member at different times after the expiration of sixty days, and a circular was sent to such member to the effect that remittances upon assessments would be received after the expiration of sixty days upon condition that the member was in good health and free from injury, *held*, that the right of the association to claim a forfeiture of such member's certificate because certain assessments had remained unpaid for more than sixty days at the time of his death was waived. (1)

SAME: POWERS OF OFFICERS. An officer of a mutual benefit association who is its executive head, keeps its records, holds its funds in trust, and pays out the same on approval, has power to bind the association by waiving a forfeiture provided for in its by-laws. (2)

*Appeal from Linn District Court.*—HON. JAMES D. GIFFEN, Judge.

FRIDAY, JANUARY 26, 1894.

THE plaintiff brings this action in equity upon a certificate of life insurance issued by the defendant, a mutual life insurance company upon the assessment

plan, to the deceased husband of the plaintiff, in which certificate the plaintiff is named as the beneficiary. The plaintiff alleges the death of her husband, that proofs of death were made, that the defendant refuses to pay the amount due to her upon said certificate or to make an assessment therefor, and prays that the defendant may be compelled to make an assessment for the payment of the amount due under said certificate. The defendant answered, alleging a forfeiture of said certificate by failure to pay assessments 74 to 82 inclusive, for one dollar each, made during the lifetime of the insured, and of which due notice was given. The plaintiff filed a reply in five separate paragraphs. The first denies the allegation of forfeiture, and admits certain other allegations that are not questioned, and not necessary to be stated. The second alleges a waiver of the right to forfeiture for nonpayment of assessments 74, 75, and 76 by an extension of time for payment, and tenders "nine dollars, together with the interest thereon from the dates the same were due for the said assessments 74 to 82, inclusive." The third alleges that on March 3, 1887, S. C. Moore sent three dollars to the defendant, with direction to apply the same in payment of assessments 77, 78, and 79; that the defendant, ignoring said direction, without authority applied the same to assessments 71, 72, and 73, and sent no statement showing upon what previous assessments said payment had been applied; that S. C. Moore did not authorize or approve of said application, and that defendant retains said three dollars. The fourth division alleges that the sixty days allowed for the payment of assessments 77 to 82, inclusive, had not expired at the time of the death of Mr. Moore. The fifth alleges a further waiver as to assessments 74, 75, and 76, in that, after the expiration of sixty days, the defendant continued to consider and treat Mr. Moore as a member by making assessments against him, and

giving notice thereof. The defendant filed an admission of certain allegations in the reply, and a denial that it did not have authority to apply said payment of March 3, 1887, to assessments 71, 72, and 73. Also denying that it did not send a statement to Mr. Moore, showing upon what previous assessments said three dollars had been applied. The decree was entered requiring defendant to make an assessment, and out of the proceeds to pay to the plaintiff two thousand, five hundred dollars, "less the sum of six dollars due the defendant on assessments numbered 77, 78, 79, 80, 81, and 82, together with interest." The defendant appeals.—*Affirmed.*

*Charles A. Clark* for appellant.

*E. C. Herrick* for appellee.

GIVEN, J.—Among numerous facts admitted in the pleadings and in an agreed statement of facts are the following: The certificate sued upon makes the application upon which it was issued a part of the contract. In the application the assured agreed "to make punctual payment of all dues and assessments, and to conform in every respect to the by-laws and rules and regulations now in force, or which may be lawfully adopted hereafter." The by-laws provide as follows: "Any member who fails to pay any assessment within sixty days from the date of the notice thereof shall forfeit his membership in the association, and all right to any benefit therein." Assessments were duly made, and notices thereof given to the deceased, as follows: Assessments 65, 66, and 67, October 1, 1886; assessments 68, 69, and 70, November 1, 1886; assessments 71, 72, and 73, December 1, 1886; assessments 74, 75, 76, January 20, 1887; assessments 77, 78, and 79, March 1, 1887; assessments 80, 81, and 82, April 1, 1887. November 22, 1886, deceased remitted three dollars "for assessments num-

bered 68, 69, and 70," but which defendant applied to the payment of the previously unpaid assessments 65, 66, and 67. On December 23, 1886, deceased remitted three dollars "for assessments numbered 71, 72, and 73," which the defendant applied to the payment of 68, 69, and 70. On March 3, 1887, the deceased remitted three dollars in payment of 77, 78, and 79. The defendant stamped the exhibit accompanying the remittance, "Applied for previously unpaid assessments, $3.00 due," and sent the same to the deceased with second notices of assessments 71, 72, 73, 74, 75, and 76. The money thus paid was retained by the defendant, and never returned. All the assessments mentioned were duly and regularly made. The assured, while in good health, and free from injury, was run over by an engine April 20, 1887, which caused his instant death. The number of members in good standing was largely more than sufficient to yield a sum in excess of the limit of the certificate, namely, two thousand, five hundred dollars.

I.    The first contention is whether the burden of proving nonpayment of assessments is upon the appellant, or upon the appellee to prove payment. In the view we take of the case as shown in the pleadings, the question of payment or nonpayment of assessments is not involved. The appellant alleges nonpayment of assessments 74 to 82, inclusive. The agreed statement of facts shows that the sixty days allowed for payment had not expired as to assessments 77 to 82 at the time of the death of Mr. Moore. The agreement to pay assessments was by the assured alone, "I agree to make punctual payments," etc. "Any member who fails to pay any assessments within sixty days from the date of the first notices shall forfeit his membership in the association, and all right to any benefit therein." We think that a forfeiture can not be based upon a failure to pay existing assessments not due at the time of the

death of the assured. That such assessments may be a valid claim against the estate of the deceased, and may be deducted from the amount due on the certificate, is not questioned in this case. We are of the opinion that the failure to pay assessments 77 to 82 was not, under the facts, ground for forfeiting the certificate.

It follows that the only assessments remaining to be considered are 74, 75 and 76. Referring to the reply, we see that in the second division the appellee alleges a waiver as to these assessments, and in the third division a payment of 77, 78, and 79. Said third division is somewhat complicated. It commences by saying, "and for a further defense to said alleged forfeiture for nonpayment of said assessments numbers 74, 75, and 76," and then states the dates of the notices of 71 to 79, inclusive, and alleges that on March 3, 1887, Mr. Moore sent three dollars, with written direction to apply it on 77, 78, and 79; that the defendant wrongfully applied it on 71, 72, and 73; and then says: "And the plaintiff alleges that the defendant had no right or authority to apply said money upon said assessments 71, 72, and 73; that the acceptance and retention of said money under the said written directions of said S. C. Moore to apply the same on said assessments 77, 78, and 79 constituted a payment of said assessments, and a waiver on the part of the defendant of the failure, if there were, to pay said assessments 71 to 76, inclusive; and the defendant is now barred and estopped by the said facts from claiming any forfeiture for the nonpayment of assessments 71 to 76, inclusive, or either of them." Clearly this is not an allegation of payment of assessments 74, 75, 76, but of 77, 78, and 79. It is only a further plea of waiver as to 74, 75, and 76. It is not alleged nor is there any evidence to show, that said remittance of March 3 was applied or directed to be applied to assessments 74, 75, and 76. The allegation is, and the evidence tends to show, that it was directed

to be applied to 77, 78, and 79, and that it was applied to 71, 72, and 73. Evidence was introduced tending to show that after assessments 56, 57, and 58 a change was made by the appellant in the manner of keeping accounts, and that said assessments 56, 57, and 58 were omitted, to be carried forward against assured. That Mr. Daniels, secretary of the appellant company, paid said assessments on his own motion, rather than to explain the omission; and afterwards reimbursed himself from a remittance made to pay a subsequent assessment, without informing the assured. It is claimed that this payment was a satisfaction of 56, 57, and 58, and that, applying the subsequent remittances, they were sufficient to cover all subsequent assessments, including 74, 75, and 76. It is sufficient to say that no such claim is made in the reply, and, if it had been, we are inclined to think that, as Mr. Daniels made the payment of 56, 57, and 58 without the request or knowledge of the assured, and to prevent a forfeiture of the certificate, he might properly reimburse himself from the next remittance; but as to this we express no opinion, as, under the pleadings, the question is not involved in the case. In view of the arguments, we have examined the pleadings with care as to this question of payment, and reach the conclusion that payment is not claimed as to any of the assessments in question; that no claim of payment is made as to 74, 75, and 76; and that the failure to pay 77 to 82, inclusive, would not be ground for forfeiture. Therefore the question of payment, or of the burden of proof as to payment or nonpayment, is not involved in this case. The case, as presented in the pleadings, stands upon the question whether there was a waiver of payment as to assessments 74, 75, and 76.

II. We have seen that notices of assessments 74, 75, and 76 were dated January 20, 1887, and were not paid within the sixty days allowed, nor since, except by

the tender made by the plaintiff. The appellant had unquestioned right at and after the expiration of said sixty days to treat Mr. Moore's membership as forfeited, unless it had waived that right. If it did waive that right, it is now estopped from asserting it. "Waiver is a voluntary relinquishment of some right which, but for such relinquishment, a party would have continued to enjoy. Voluntary choice, and not mere negligence, is the essence, though from negligence unexplained such election may be inferred. Waiver is a question of fact to be determined from declarations and acts or from forbearance to act." Anderson's Law Dict., "Waiver." A waiver may exist regardless of the intention of the insurer, as when its acts and declarations or forbearance to act gives the insured reason to believe that the right to a forfeiture has been waived. In the case of *Tobin v. Aid Society*, 72 Iowa, 261, it is said, quoting from May on Insurance: "It is not the intention of the insurer, but the effect upon the insured, which gives vitality to the estoppel." In *Bailey v. Mutual Benefit Association*, 71 Iowa, 689, it is said: "The defendant received and held the money until after the death of the deceased, and he had a right to regard the contract as in force, regardless of any intention of the defendant to the contrary."

We are to inquire, therefore, whether, from the declarations and acts or forbearance to act of the defendant, Mr. Moore had a right to regard his contract of insurance as in full force up to the time of his death. The facts mainly relied upon as showing not only an intention on the part of the appellant to continue the contract, but that warranted the assured in believing that the contract was continued in full force, are briefly these: Mr. Moore became a member August 23, 1885, and, as we have seen, eighty-two assessments were made against him. As to seventy-six of these, the sixty days for payment had expired before his death.

Assessments 56, 57, and 58 were never paid, except by Mr. Daniels, as heretofore stated. Fifty-nine, 60 and 61 were not paid until one day after the expiration of the sixty days, and 71, 72, and 73, if at all, not until about thirty days after. Notwithstanding these failures to pay within the sixty days, the appellant continued to make assessments against Mr. Moore, to send him notices thereof, to receive payment thereon, both before and after sixty days, and in every respect to treat him as a member of the association. With the notices of assessments 77, 78, and 79, dated March 1, 1887, the appellant's secretary inclosed to Mr. Moore the following: "This explains how you can be reinstated after forfeiting your membership: As members occasionally forfeit their membership unintentionally, and remit soon after the time has expired, the insurance committee has instructed me to accept remittances received after the expiration of the sixty-days limit if received before the certificate number has been filled, but that in each case it must be only on condition that the member is in good health, and free from injury. Thus any who are late, and have forfeited their membership, may be reinstated by remitting within a reasonable time, if they are in good health, and free from injury, in accordance with the conditions above." It is true the sixty days for payment of assessments 74, 75, and 76 had not expired when notices of 77, 78, and 79 were sent, and that the sending of these notices does not indicate a waiver as to 74, 75, and 76. It is equally true that this circular was intended to apply to 74, 75, and 76. Surely the assured might understand therefrom that, instead of being required to pay assessments 74, 75, and 76 within the sixty days, he might pay them upon the terms stated in this circular. While we might hesitate to find that the general course of business between the appellant and deceased was such as to establish the waiver alleged, we are, with this circular

before us, without doubt upon that question. The information contained therein was transmitted to the assured before the expiration of the time for paying assessments 74, 75, and 76. It clearly indicates an intention upon the part of the appellant not to forfeit for failure to pay at the expiration of the sixty days, and gave to the assured the right to believe that the contract would be continued in force for a reasonable time, even though he did not pay within the sixty days, if he was in good health, and free from injury, at the time of payment. Upon this subject see *Loughridge v. Iowa Life and Endowment Association*, 84 Iowa, 141.

It will be noticed that the acts relied upon as showing a waiver are those of the insurance company as indicated in said circular and of the secretary of the appellant company. The appellant contends that neither of these had authority to alter or change the by-laws; that under the by-laws a forfeiture followed from a failure to pay, and that there was no authority in the committee or secretary to reinstate upon any terms. A large number of authorities are cited that go far to sustain this claim, but we think that the contention is fully answered in the case of *Loughridge, supra*. In that case the by-laws authorize the secretary to keep the records, accounts, and seal of the company, conduct the correspondence, collect moneys due, countersign certificates, and to make assessments, records and communications; also, to notify members of assessments, to bank the funds at the close of each day's business, balance his cash account, turn over the balance to the treasurer, "and perform such other duties as the directors deem necessary." The by-laws of the appellant provide that "the insurance committee shall be the executive head of the association," and then follow certain specified powers. They also provide that the grand secretary shall keep a record of the business, the register of members, hold in trust funds of the asso-

ciation for claims approved, pay the same on approval, submit an annual report, exhibit vouchers for expenditures, and that his books shall be subject to inspection by any member of the insurance committee, or any person appointed by them. It will be noticed that as to the question under consideration these by-laws are not materially different. In the case of *Loughridge,* *supra,* this court said: "It can not be doubted that it was competent for the defendant to waive the forfeiture on account of the nonperformance of the conditions of the policy. Such waiver could have been made by the secretary, as clearly appears by the consideration of the eighteenth section of the by-laws quoted above." Whatever the holding may be elsewhere, the rule in this state is that, if the secretary or other executive officer of an association like this gives the assured reason to believe that the right of forfeiture has been waived, the association is bound by their acts.

Other questions discussed are disposed of in those that we have considered. We are in no doubt but that, if Mr. Moore, being in good health, and free from injury, had, immediately previous to his death, offered payment of the assessments unpaid, it would have been received by the defendant without question, and Mr. Moore continued in membership, as had been done in the past, notwithstanding his previous failures. It follows from our conclusions that the decree of the district court must be AFFIRMED.