## Lena Henry, Appellee, v. North American Union, Appellant.

## Gen, No. 26,470.

1. INSURANCE—*waiver of prohibited occupations clause by insurer.*   It is well settled that conditions in relation to prohibited occupations contained in a fraternal beneficiary contract are for the benefit of the insurer and therefore the insurer can waive them.

2. INSURANCE—*sufficiency of evidence to show waiver by insurer of prohibited occupations clause.*   Where a decedent had been a member of a subordinate lodge of a fraternal order and had paid dues for 20 years, and was well known to the officers of the council, and where also the supreme officers of the order were in close proximity to and frequently dined at the premises where the decedent was employed as manager of a bar and restaurant operated by a wholesale liquor establishment, and where such supreme officers, who knew of decedent's occupation, nevertheless afterwards issued him a new certificate on account of the loss of the original, the right of forfeiture on the ground that decedent was engaged in a prohibited occupation was waived.

3. INSURANCE—*effect of waiver by subordinate lodge of ground of forfeiture.*   A subordinate lodge of a fraternal society *held* to be the agent of the supreme lodge or council, notwithstanding the declarations or by-laws of the society to the contrary, and full knowledge by the subordinate lodge of facts sufficient to render a certificate void and continuing to receive dues from a member, *held* to have resulted in a waiver of the right to forfeit the certificate.

Appeal from the Municipal Court of Chicago; the Hon. CHARLES A. WILLIAMS, Judge, presiding.   Heard in the Branch Appellate

Court at the October term, 1920. Affirmed. Opinion filed November 1, 1921. *Certiorari* denied by Supreme Court (making opinion final).

DANIEL S. WENTWORTH and DAVID B. MALONEY, for appellant.

SMITH & WALLACE and BRADLEY, WILLIAMS, KEARNS & FARRELL, for appellee; THOMAS E. D. BRADLEY and EDWARD J. FARRELL, of counsel.

MR. JUSTICE MORRILL delivered the opinion of the court.

Suit was brought in the municipal court by appellee, who was plaintiff below, as beneficiary under a certificate issued by defendant, a fraternal beneficiary society organized under the laws of this State. There was a trial without a jury, resulting in a finding in favor of plaintiff for $4,000, the amount of the certificate, on which judgment was entered.

The statement of claim alleged the issuance of a certificate dated October 18, 1916, insuring the life of John M. Henry, who became a member of the defendant organization on March 1, 1897; that the insured died on August 14, 1917; that he was then a member in good standing and that, by reason of his death, defendant became liable to plaintiff as beneficiary under the certificate for the amount thereof.

The amended affidavit of merits alleged that the application for membership on the part of the insured contained an agreement, which provided among other things as follows:

"That the insured, for the purpose of securing membership in the North American Union, agreed that his suspension or expulsion from, or his voluntarily severing his connections with the North American Union, in accordance with the laws and requirements of the North American Union, would forfeit and absolutely determine, without any proceedings on the part of the Society, or notice therefrom, all rights, inter-

ests, payments, benefits and privileges of himself, his family, heirs, beneficiaries or dependents named in any beneficiary certificate which may be issued upon the agreement.

"That the insured was not then engaged in the occupation of saloon keeper or in the manufacture and sale of intoxicating liquors, and that should he become engaged in any such occupation or employment, his so doing should forfeit and absolutely terminate all rights, interests, payments, benefits and privileges of himself, his family, heirs, dependents or beneficiaries, without proceedings for expulsion or otherwise on the part of the defendant."

The affidavit also alleged that the by-laws of the society provided among other things that persons engaged in the business of saloon keeper, bartender, or in the manufacture, sale, serving or delivering of intoxicating liquors were not acceptable risks and were ineligible to membership in the North American Union; that any person engaged in such occupation would by operation of law and without notice forfeit all rights in the North American Union, and no benefit should be paid to the beneficiary on account of the death of the member while engaged in such employment, or as a direct result of having engaged in such prohibitive occupation; that no subordinate body of the order or subordinate officers or members shall have power or authority to waive or modify any provisions of the by-laws or constitution; that notice, information or knowledge going to any subordinate body, council, officer or member of the order other than to the supreme president or *general manager* that a member has violated the laws of the order as having engaged in a prohibited occupation shall not constitute or be construed as notice to the North American Union, unless the member violating such law or engaging in such prohibited occupation shall within 3 days thereafter serve a written notice upon the supreme president or general manager of the fact that he has en-

tered into such prohibited occupation; that the receipt and retention of dues should not constitute a waiver of the provisions of the law, and that the receipt and retention of premiums after a member has become engaged in such prohibited occupation would not constitute a waiver of the provisions of the by-laws providing for suspension for engaging in such occupation.

Upon the trial of the case the certificate and proofs of death were received in evidence, the latter showing that the insured died August 14, 1917, after an illness of 3 years, and that he was then employed as a manager by Chapin & Gore at 61 East Adams street. On behalf of the defendant the application for membership and the by-laws for various years, including those of 1913, were received in evidence. These by-laws, in addition to the provisions hereinbefore noted, also provided, in substance, that it is the duty of each member of the order having knowledge that another member is engaged in any prohibited occupation to give immediate notice thereof to the general manager, who shall upon receipt of such notice direct the secretary and collector of the council to which the offending member belongs to strike his name from the membership roll and at the same time notify such member that his name has been stricken from membership in the order, and unless such member shall within 10 days show cause to the general manager for having his name restored, then the action of the manager and council officers shall stand affirmed.

Further testimony taken upon the trial shows that at the time the insured joined the society he was employed as a carriage salesman; that in 1904 he became a salesman for Chapin & Gore, who were wholesale liquor dealers; that in 1913 he became the manager of an establishment at 61 East Adams street, Chicago, which contained a bar and a restaurant, the business of which was conducted in the name of the insured,

although it was in reality owned by Chapin & Gore, to whom the daily cash receipts were delivered by Henry. The bar and restaurant were in the same building as the wholesale liquor establishment conducted by Chapin & Gore, who employed Henry as their manager to conduct the restaurant business. Henry's duty was to supervise the restaurant. It is true that the license for the bar was issued in his name, but this is alleged to have been due to the fact that Chapin & Gore were wholesalers and bound not to compete openly with their customers, who were retailers. The fee for the license was paid by Chapin & Gore. Henry also employed the help both in the restaurant and at the bar. He had a desk on the premises and was concerned almost entirely with the operation of the restaurant. He had nothing to do with the bar except by way of general supervision of the entire premises and the further exception that he took the money from the cash register of the bar and made daily deliveries thereof to Chapin & Gore on the second floor of the same building. Henry rendered to Chapin & Gore monthly statements of the bills incurred in the business. Chapin & Gore then gave him a check for the entire amount, excepting the bills for such goods as were furnished by Chapin & Gore, and Henry paid the bills with the proceeds of the check. The insured was paid $200 per month for his services and had some contingent interest in the profits, upon which he never realized anything for the reason that the profits never reached the figure stipulated as the basis for a distribution to him. The employees about the place were paid weekly by Chapin & Gore. After Henry's death the place was operated by them with another manager.

These facts are undisputed. Appellant contends that they show conclusively that the insured at the time of his death and prior thereto was a saloon keeper and engaged in the sale of intoxicating liquors, being occupations prohibited under the by-laws above

mentioned, and that by being so engaged he forfeited his rights to the benefits provided in the certificate, rendering a recovery thereon impossible. On behalf of the appellee it is urged that even if the decedent may properly be classed as a saloon keeper and engaged in the sale of intoxicating liquors, which is vigorously denied, nevertheless there was a waiver by the society of the provisions of the by-laws permitting a forfeiture in such a case. The main question to be determined in this controversy is, whether or not the evidence justified the court in finding that there had been such a waiver. It is well settled that such conditions of the contract as have been mentioned are for the benefit of the insurer, and therefore the insurer can waive them. *Phenix Ins. Co. v. Hart,* 149 Ill. 513; *Germania Life Ins. Co. v. Koehler,* 168 Ill. 301.

The evidence bearing upon the question of waiver shows that the insured had been a member of Normal Park Lodge No. 11 of the North American Union for 20 years. He paid his dues to the collector of that lodge during the entire period. He was well known for 25 years to F. L. Chase, who had been president, chancellor and collector of the council. He was also well acquainted with the secretary of the council for 16 years prior to his death. Both of these men were on the committee of identification which was required to report upon Henry's death to the council, and stated under oath that for 2 years prior to his death he was manager at 61 East Adams street. The supreme president of the North American Union was Harold Spensley and the general manager was W. E. Nunnemacher. During the years 1913 to 1915, Louis K. Cleaveland was chairman of the board of trustees and a member of the executive committee. The defendant's general offices were in close proximity to the premises at 61 East Adams street and all of the officers last named were in the habit of eating and drinking there during the years 1913 and 1914. October 18,

1916, the defendant issued a new certificate, the original certificate having been lost, to Henry certifying that he was entitled to all the rights, privileges and benefits of membership, which was signed by Mr. Spensley, the supreme president. A record thereof was kept by the general manager, Mr. Nunnemacher, and the certificate was also signed by Mr. Furgeson, secretary of the local council, who stated under oath that he had been well acquainted with Mr. Henry for 16 years prior to his death and knew that for 2 years prior to his death Henry had been manager at 61 East Adams street. In the year 1913, while Mr. Chase was a member of the supreme council, he called upon Mr. Henry at his place of business and suggested that he (Henry) was violating the rules of the order, and by appointment went with him to see the general manager on the next day. They were accompanied by a brother lodge member named Beecher, who died prior to the trial. For some reason they were unable to see the general manager but talked with the assistant general manager regarding the nature of Henry's occupation. At the trial of the case neither side was able to obtain the testimony of the assistant general manager, and owing to the death of both Beecher and Henry, it was impossible to ascertain what was said in the conversation above mentioned, it appearing that Mr. Chase left the room prior to its commencement. It is fair to presume, however, that the nature of Mr. Henry's occupation was then discussed and made known to the assistant general manager, who was unquestionably the authorized agent of the general manager, and it is evident that no steps were taken to strike Mr. Henry's name from the roll of membership or to notify him that his name had been so stricken in accordance with the provisions of one of the by-laws hereinbefore mentioned. The appellee contends that if there ever was any ground for the forfeiture of the benefit certificate in question it was waived both by the supreme officers,

who knew of his occupation and afterwards issued him a new certificate on account of the loss of the original certificate, and by the officers of the local council, who accepted his dues without any protest until the time of his death, while appellant contends that if there is anything in the evidence tending to show a waiver it was a waiver by agents of the defendant who had no authority to make the same, and therefore was not binding upon the defendant.

The questions submitted to us for determination are not new; they have been before this court and the Supreme Court of this State in a number of instances. It is well settled that a subordinate lodge, like the Normal Park Council No. 11, of a beneficiary society like the North American Union, is the agent of the supreme lodge or council, notwithstanding the declarations or by-laws of the society to the contrary. A subordinate lodge having a full knowledge of facts sufficient to render a certificate void and continuing to receive dues from a member results in a waiver of the right to forfeit the certificate. The receipt of dues by the subordinate lodge and the payment of them to the society of necessity recognizes the certificate as being in full force and effect. *McCarthy v. National Council,* 210 Ill. App. 111; *Coverdale v. Royal Arcanum,* 193 Ill. 91; *Dromgold v. Royal Neighbors of America,* 261 Ill. 60. In two of the cases above cited the forfeiture was claimed for the same identical reason as in the case at bar.

The same identical questions were involved in the case of *Zeman v. North American Union,* 263 Ill. 304, wherein the defendant society sought to enforce the forfeiture of a benefit certificate upon the ground that the insured had been engaged in the saloon business during the time that he was a holder of the benefit certificate, which we assume to have been of the same character as the benefit certificate held by the insured in the case at bar. Apparently by-laws which were in

force at the time of the death of the insured contained the same provisions upon this subject as those which were in force at the time of Mr. Henry's death. After a full consideration of the facts and a review of the authorities the Supreme Court held that there had been a waiver of the right to a forfeiture upon the ground that the insured had been engaged in a prohibited occupation. The facts in the *Zeman* case tending to show knowledge on the part of the officers of the supreme council of the defendant society were not as conclusive as the evidence upon that subject in the case at bar. We consider that in view of these express holdings of both of the reviewing courts of this State the question as to whether or not there was a waiver in this case is settled, and we are obliged to hold that there was such a waiver.

A motion has been made by appellee to tax as costs the expense of printing the additional abstract of record filed herein by said appellee, which is allowed. A motion has also been made by appellee for the assessment of statutory damages of 10 per centum upon the amount of the judgment upon the ground that the appeal was prosecuted for delay. We are not satisfied that the sole reason for the prosecution of the appeal was delay, and therefore this motion will be denied.

The judgment of the municipal court is affirmed.

*Affirmed.*

GRIDLEY, P. J., and BARNES, J., concur.